Case No. 3:20-cv-03390-X

---

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

---

### JAMES DONDERO,

#### Appellant,

v.

### HIGHLAND CAPITAL MANAGEMENT, L.P.,

#### Appellee.

---

**On Appeal from the United States Bankruptcy Court for the
Northern District of Texas, Dallas Division
The Honorable Stacey G. C. Jernigan, United States Bankruptcy Judge**

**In re: Highland Capital Management, L.P.
Case No. 19-34054**

---

### BRIEF OF APPELLEE
### HIGHLAND CAPITAL MANAGEMENT, L.P.

---

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
(*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084)
(*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326)
(*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992)
(*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569)
(*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:      jpomerantz@pszjlaw.com
            ikharasch@pszjlaw.com
            jmorris@pszjlaw.com
            gdemo@pszjlaw.com
            hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel./Fax: (972) 755-7100

*Counsel for Appellee,*
*Highland Capital Management, L.P.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellee Highland Capital Management, L.P. is a limited partnership, the general partner of which is Strand Advisors, Inc., a privately held corporation.  No publicly held corporation owns 10% or more of the interests in either entity.

# TABLE OF CONTENTS

**Page**

**TABLE OF CONTENTS** ................................................................ i

**TABLE OF AUTHORITIES** ......................................................... ii

**STATEMENT OF ISSUE AND STANDARD OF REVIEW** ............................ 1

**STATEMENT OF FACTS** ............................................................. 2

   A.  The Acis Bankruptcy Case ..................................................... 3

   B.  The Highland Bankruptcy Case ............................................. 8

   C.  Highland's Objection to the Acis Claims ................................. 10

   D.  Mediation and Settlement .................................................... 15

   E.  The Bankruptcy Court's Consideration and Approval of the Settlement Agreement ................................................................. 16

**SUMMARY OF ARGUMENT** ...................................................... 22

**ARGUMENT** ......................................................................... 25

   A.  The Bankruptcy Court Was Not Required to Make Express Findings Demonstrating Its Independent Analysis of the Risks, Costs, Complexity and Likely Duration of Litigation of the Acis Claim or the Highland Claims .... 25

   B.  The Bankruptcy Court Was Extremely Familiar with the Claims at Issue ... 29

   C.  The Record Supported Approval of the Settlement ..................... 31

   D.  Mr. Dondero's Arguments Concerning the Costs and Benefits of Further Litigation Are Factually Unfounded and Legally Irrelevant ......................... 35

   E.  The Settlement Does Not Violate the Absolute Priority Rule ..................... 37

**CONCLUSION** ....................................................................... 40

**CERTIFICATE OF COMPLIANCE WITH RULE 8015** ............................ 42

# TABLE OF AUTHORITIES

Page

## Cases

*In re Flight Transportation Corporation Securities Litigation,*
730 F.2d 1128 (8th Cir. 1984) ................................................................29

*Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800 (9th Cir. 1994)) ... 11, 12

*Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80 (S.D.N.Y. 2008) .......11

*Balaber-Strauss v. Harrison (In re Murphy)*, 331 B.R. 107 (Bankr. S.D.N.Y. 2005) ................................................................................................................11

*Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.*, 417 U.S. 703, 94 S. Ct. 2578 (1974)................................................................................14

*Brown v. Lykes Bros. S.S. Co.*, 484 F.2d 61 (5th Cir. 1973) ..................................28

*Caterino v. United States*, 794 F.2d 1, 6 n.2 (1st Cir. 1986) ..................................28

*Crescent Res. Litig. Tr. Ex rel. Bensimon v. Duke Energy Corp.*, 500 B.R. 464 (W.D. Tex. 2013)................................................................................13

*Energy Future Holdings Corp. v. Del. Trust Co.*, 648 Fed. Appx. 277 (3d Cir. 2016) ................................................................................................................39

*Gibson v. Speier (In re Gibson)*, No. CC-11-1028-MkKiD, 2011 Bankr. LEXIS 4341, at *16-18 (B.A.P. 9th Cir. Aug. 3, 2011) ..................................................28

*Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000) ..............2

*Grover Hill Grain Co. v. Baughman-Oster, Inc.*, 728 F.2d 784, 793 (6th Cir. 1984) ................................................................................................................28

*In re Acis Capital Mgmt., L.P.*, 584 B.R. 115 (Bankr. N.D. Tex. 2018)............ 4, 30

*In re Age Ref. Inc.*, 801 F.3d 530 (5th Cir. 2015) ....................................................26

*In re AWECO, Inc.*, 725 F.2d 293 (5th Cir. 1984)....................................................38

*In re Cypresswood Land Partners, I*, 409 B.R. 396, 418 (Bankr. S.D. Tex. 2009) 38

*In re Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995)....................................1

*In re Heissinger Res., Ltd.*, 67 B.R. 378 (C.D. Ill. 1986) ........................................27

*In re Think3, Inc.*, 529 B.R. 147 (Bankr. W.D. Tex. 2015)......................................14

*MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530 (5th Cir. 2012) ........................................................................................ passim

*MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530, 534 (5th Cir. 2012) ............................................................................11

*Meyers v. Moody*, 693 F.2d 1196 (5th Cir. 1982)...................................................14

*Mirant*, 441 B.R. 791, 803 (N.D. Tex. 2010) .........................................................13

*Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P.)*, 604 B.R. 484 (N.D. Tex. 2019)............................................................................ 2, 27

*NWCC, LLC v. Highland CLO Management, LLC, et al.*, Index No. 654195/2018 (N.Y. Sup. Ct. 2018)..................................................................9

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349 (5th Cir. 1997) .............................................26

*Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Tex. Rangers Baseball Partners)*, 498 B.R. 679 (Bankr. N.D. Tex. 2013)................... 12, 13, 30

*PM Denver, Inc. v. Porter (In re Porter McLeod, Inc.)*, 231 B.R. 786 (D. Colo. 1999) .................................................................................15

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S. Ct. 1157  (1967).................................................29

*Simeonoff v. Hiner*, 249 F.3d 883 (9th Cir. 2001) ..................................................28

*Stainaker v. DLC, Ltd.*, 376 F.3d 819 (8th Cir. 2004) .............................................11

*Tex. Rangers*, 498 B.R. at 709 .................................................................................13

*Wellman v. Wellman*, 933 F.2d 215 (4th Cir. 1991) ................................................11

## Other Authorities

11 U.S.C. Section 1123(a)(4).....................................................................................39

DOCS_LA:337434.7 36027/002

Appellee Highland Capital Management, L.P. ("<u>Highland</u>" or the "<u>Debtor</u>") hereby submits its Answering Brief to the Opening Brief of Appellant James Dondero in respect of Mr. Dondero's appeal from the *Order Approving Debtor's Settlement with (a) Acis Capital Management, L.P. and Acis Capital Management GP LLC (Claim No. 23), (b) Joshua N. Terry and Jennifer G. Terry (Claim No. 156), and (c) Acis Capital Management, L.P. (Claim No. 159) and Authorizing Actions Consistent Therewith* [Docket No. 1302] entered by the United States Bankruptcy Court for the Northern District of Texas (the "<u>Bankruptcy Court</u>") on October 28, 2020 in the above-captioned chapter 11 bankruptcy case (the "<u>Bankruptcy Case</u>").[1]

## <u>STATEMENT OF ISSUE AND STANDARD OF REVIEW</u>

The issue on appeal is whether the Bankruptcy Court abused its discretion (not whether, as Mr. Dondero states, it "erred") in approving the settlement agreement and release between Highland, on the one hand, and Acis Capital Management, L.P. and Acis Capital Management GP, LLC (together "<u>Acis</u>") and Joshua and Jennifer Terry on the other (the "<u>Settlement</u>").    *In re Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995) (settlement approval reviewed for abuse of discretion).

---

[1] Docket references are to the docket in the Bankruptcy Case.

DOCS_LA:337434.7 36027/002

As the District Court elaborated in a recent appeal in Acis's own bankruptcy case, "[t]o constitute an abuse of discretion, the [bankruptcy] court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous." *Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P.)*, 604 B.R. 484, 506 (N.D. Tex. 2019) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000)). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. If the trier of fact's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it. . . . The bankruptcy judge's unique perspective to evaluate the witnesses and to consider the entire context of the evidence must be respected. ***A reviewing court may assume that the trial court made an implied finding consistent with its general holding so long as the implied finding is supported by the evidence.***" *Id*. (internal citations and quotation marks omitted; emphasis added).

## STATEMENT OF FACTS

This is a challenge to a settlement of claims primarily between a bankrupt parent (Highland) and its formerly bankrupt subsidiary (Acis), approved after a two day evidentiary hearing by the Bankruptcy Court (The Hon. Stacey G. C. Jernigan) presiding over *both* the Highland and Acis bankruptcy cases. It involved

fraudulent transfer and related claims with which Judge Jernigan was extremely familiar, as Mr. Dondero emphasized below. Judge Jernigan had already issued rulings, after an evidentiary hearing in connection with confirmation of the plan in the Acis bankruptcy case, indicating the transfers at issue would likely be deemed fraudulent and finding, among other things, that Mr. Terry was credible and Mr. Dondero was not. Judge Jernigan was also familiar with the law, having published a decision involving the most prominent legal issue in Highland's objection. In other words, this is the very antithesis of a case in which a court rubber-stamps a settlement without being fully advised in the premises.

## A.    The Acis Bankruptcy Case

Mr. Terry is a former employee of Highland and limited partner in Acis LP, a portfolio management company that was previously beneficially owned by Mr. Dondero and Mark Okada and advised by Highland. (R. 2189). In June 2016, Mr. Terry claimed that he was wrongfully terminated and that his ownership interest in Acis LP was taken with no compensation. *Id*. Highland commenced suit in Texas state court and thereafter the matter was referred to mandatory arbitration. *Id*. The arbitrators ultimately awarded Mr. Terry approximately $8 million, and a judgment was entered on the arbitration award on December 18, 2017. *Id*.

Mr. Terry, however, claimed that he could not collect because Mr. Dondero orchestrated a scheme to "denude" Acis of assets by transferring virtually all of its

-3-

assets and attempting to transfer its profitable portfolio management contracts to non-Acis, Debtor-related entities.  *Id.*  Mr. Terry filed involuntary bankruptcy petitions against both Acis entities (collectively, the "Acis Bankruptcy Case").  (R. 2189-90).   Mr. and Mrs. Terry also sued Highland and Mr. Dondero for converting their retirement accounts, in an action captioned *Joshua and Jennifer Terry v. Highland Capital Management, L.P., et al.*, Case No. DC-16-11396, in the 162nd District Court of Dallas County Texas (the "Terry Action").  (R. 2191).

Judge Jernigan granted Mr. Terry's petition for relief *and* appointed a trustee to replace Mr. Dondero's management.  *In re Acis Capital Mgmt., L.P.*, 584 B.R. 115 (Bankr. N.D. Tex. 2018) (R. 395).  The decision expresses strong views on Mr. Dondero's lack of credibility and the fraudulent intentions behind the transfers of Acis's assets:

> The court found the testimony of Mr. Terry to be very credible. . . . The court also finds that Mr. Terry—at the time he filed the Involuntary Petitions—had a good faith belief that the Alleged Debtors and those controlling them were engaged in an orchestrated, sophisticated effort to denude the Alleged Debtors of their assets and value (i.e., transferring assets and rights for less than reasonably equivalent value), which started with intensity after issuance of the Arbitration Award (if not sooner).
>
> The court found the testimony of almost all of the witnesses for the Alleged Debtors to be of questionable reliability and, oftentimes, there seemed to be an effort to convey plausible deniability. . . .  Mr. Dondero . . . testified that he had never even read the Arbitration Award. . . .  [T]his court simply does not believe that he never read the Arbitration Award. The court

-4-

perceived the animosity between Mr. Dondero and Mr. Terry to be rather enormous. . . .  [I]t strains credulity to suggest Mr. Dondero never even read the Arbitration Award.

* * *

Again, there was a lot of plausible deniability at Trial as to the "whos" and "whys" for the recent maneuverings involving the Alleged Debtors assets and rights in the weeks since the Arbitration Award. The one thing that the court was wholly convinced of was that conflicts of interest among Highland and the Alleged Debtors abound, and no one is looking out for the interests of the Alleged Debtors as a fiduciary should.

*Id*. at 131-32.  The Bankruptcy Court upheld the involuntary filing and concluded that "a chapter 7 trustee appears necessary to halt the post-Arbitration Award transactions and transfers of value out of Acis LP. . . ."  *Id*. at 149-50.

The Acis Bankruptcy Case was contentious.  Highland and Highland CLO Funding, Ltd. ("Highland Funding"), the predominant subordinated noteholder in the collateralized loan obligations managed by Acis (the "Acis CLOs") sued the Acis trustee, who then asserted counterclaims, for among other things, recovery of the alleged fraudulent transfers and for injunctive relief.  (R. 2190).  Acis's second amended complaint against Highland (the "Acis Complaint") comprised 34 causes of action, including for intentional and constructive fraudulent transfers of Acis's property, breaches of fiduciary duties owed by Highland to Acis, and preferential transfers.  In its final iteration, the Acis Complaint (R. 2350-2462) asserted the following claims (the "Acis Claims"):

- Claims to recover $7 million in "Overpayments" by Acis to Highland that allegedly exceeded the amount permitted in Acis's governing documents absent Mr. Terry's consent, which the arbitration panel found that Mr. Terry had not given.

- Actual and constructive fraudulent transfer claims under federal and Texas law based on modifications to a Sub-Advisory Agreement between Acis and Highland that increased Highland's rates from 5 to 20 basis points.

- Actual and constructive fraudulent transfer claims under federal and Texas law alleging that Acis's rights to direct and effectuate an optional redemption and otherwise control the assets of Acis Loan Funding Ltd. ("ALF"), pursuant to a Portfolio Services Agreement between Acis and ALF (together, the "ALF PMA") were transferred for no value to Highland HCF Advisor in October 2017.

- Actual and constructive fraudulent transfer claims under federal and Texas law alleging Acis's equity interest in ALF was transferred to Highland Funding for inadequate value in October 2017 (the "ALF Share Transfer").

- Actual and constructive fraudulent transfer claims under federal and Texas law alleging that a $9.5 million promissory note owed by Highland to Acis (the "Note") was transferred to a Highland affiliate for no material value in November 2017.

- Actual and constructive fraudulent transfer claims under federal and Texas law alleging that Acis's interests in sub-advisory and services agreements relating to Acis CLO 2017-7 (a collateralized loan obligation) and Acis's indirect equity interests in the underlying CLO were transferred for inadequate value in December 2017.

- Preference claims of $16 million on account of payments made to Highland during the year before bankruptcy under the Shared Services Agreement and Sub-Advisory Agreements and on other debts.

- Civil conspiracy claim alleging that Highland and affiliates conspired to "engage in a series of fraudulent transfers and other fraudulent schemes, including the ALF PMA Transfer, the ALF Share Transfer, the Note Transfer, the 2017-7 Equity transfer, the 2017-7 Agreements transfer and the

-6-

thwarted Universal/BVK Agreement transfer in order to denude Acis's assets and take over Acis LP's valuable business."

- Tortious interference claim for seeking to replace Acis as manager under an advisory agreement between Acis and Universal-Investment-Luxembourg S.A. (the "Universal/BVK agreement").

- Breach of the Sub-Advisory Agreement and Shared Services Agreement between Acis and Highland.

- Breach of fiduciary duty allegedly owed as Acis's investment adviser based on the foregoing allegations.

- Claims for punitive damages, alter ego liability, violation of the automatic stay in the Acis Bankruptcy Case, and for attorneys' fees.

The Acis Complaint also included objections to Highland's claims in the Acis Bankruptcy Case for: (1) a prepetition unsecured proof of claims for alleged unpaid management fees; and (2) a postpetition administrative claim (collectively, the "Highland Claims").  (R. 2190).

On January 31, 2019, a chapter 11 plan of reorganization was confirmed in the Acis Bankruptcy Case (the "Acis Plan").  (R. 330-392; 2191).  The Acis Plan provided for, among other things, payment to Acis's creditors from the proceeds of the ALF PMA, a portfolio management agreement that would have been transferred to Highland but for a Preliminary Injunction obtained by Acis based on the likelihood that Acis would successfully avoid the ALF PMA transfer, which injunction was carried over into a "Temporary Plan Injunction." (R. 414-15; 1212-13).  The confirmation order expressly states that Acis had a substantial likelihood

-7-

of success in avoiding the ALF PMA transfer.  (R. 415).  It also provided for the retention and maintenance of the Acis estate's numerous causes of action against Highland and related entities (R. 365-74; 1212-13), and the purchase by Mr. Terry of the equity interests in reorganized Acis in exchange for a $1 million reduction in his claim.  (R. 1212-13).

## B.   The Highland Bankruptcy Case

On October 16, 2019, Highland filed a voluntary chapter 11 petition in the District of Delaware bankruptcy court, which was transferred on December 4, 2019 to the Bankruptcy Court [Docket No. 186].

Highland agreed to divest Mr. Dondero of management control, filing a *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* on December 27, 2019 [Docket No. 281], approved by order entered January 9, 2020 [Docket No. 339].  (R. 2067).  Pursuant thereto, an independent board of directors (the "Independent Board") was constituted at the Debtor's general partner, Strand Advisors, Inc., and certain operating protocols were instituted.  (R. 2067).  The members of the Independent Board are John S. Dubel, James P. Seery, Jr., and the Hon. Russell Nelms.  (*Id*.).

On July 16, 2020, the Bankruptcy Court entered an order appointing James P. Seery, Jr., as Highland's chief executive officer and chief restructuring officer

-8-

[Docket No. 854].  (R. 2067).  Mr. Seery, who testified in detail in support of the Settlement, is a thirty year restructuring lawyer with extensive experience with high-yield and distressed investing, which is Highland's business.  (R. 5132-33).

Acis filed a proof of claim in respect of the Acis Claims, attaching and incorporating the Acis Complaint (R. 2350-2462) and seeking damages of "at least $75,000,000.00."  (R. 2353).

In addition to the Acis Claims, Highland (or Highland Funding, which Acis alleged was controlled by Highland), was involved in other litigation with Acis or the Terrys:

- Highland Funding had also sued Mr. Terry in the Royal Court of Guernsey (the "Guernsey Suit"), a suit that Mr. Terry incurred significant expenses defending.  (R. 2190-91).  On August 5, 2020, Mr. Terry's application to set aside the leave to serve out of the jurisdiction was granted, resulting in the dismissal of the Guernsey Suit (subject to a determination of attorneys' fees and expenses owed to Mr. Terry under Guernsey's "loser pays" regime, which has not yet been determined).  (R. 2191).

- Mr. and Mrs. Terry filed a proof of claim against Highland [Claim No. 156] (the "Terry Proof of Claim") for the damages asserted in the Terry Action from the alleged conversion of their retirement accounts;

- Acis LP filed a proof of claim [Claim No. 159] (the "Acis LP Proof of Claim") relating to alleged damages arising from *NWCC, LLC v. Highland CLO Management, LLC, et al.*, Index No. 654195/2018 (N.Y. Sup. Ct. 2018) (the "NWCC Litigation").  (R. 2191).

- Acis filed a separate adversary proceeding against Mr. Dondero, Frank Waterhouse (Highland's CFO and Acis's former treasurer), Scott Ellington (Highland's general counsel), other Highland employees, and CLO Holdco, Ltd. *Id.*

- Acis also commenced state court litigation against, among others, certain Highland in-house attorneys (collectively, the "Acis Suits").  *Id.*

- Acis asserted there may be additional claims against Highland, its employees, and related entities, such as asserted violations of injunctive provisions in its plan of reorganization, and alleged breaches of a Rule 11 agreement in the Terry Action.  (R. 2191-92).

## C.   **Highland's Objection to the Acis Claims**

On June 23, 2020, Highland filed a comprehensive *Objection to Proof of Claim of Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (the "Highland Objection").  (R. 1211-1275).  Objections and joinders were also filed by Mr. Dondero (R. 1276-1283) and UBS Securities.  (R. 1293-99).

The Highland Objection sets forth several bases for disallowance of the Acis Claim.  One argument was that since Acis's creditors, including Mr. Terry, were being paid in full under the Acis Plan, Acis's fraudulent transfer and preference claims fail because Acis lacked standing to assert them and/or because avoidable transfers under section 550(a) of the Bankruptcy Code can only be recovered if there is a benefit to the estate, and no such benefit existed where creditors were already being paid in full.  (R. 1216-17).  The only beneficiaries of a recovery by Acis would be Acis itself, and its purchaser, Mr. Terry.  Highland argued that "[c]ourts have consistently held that an avoidance action can only be pursued if there is some benefit to creditors and may not be pursued if it would only benefit

-10-

the debtor." *Balaber-Strauss v. Harrison (In re Murphy)*, 331 B.R. 107, 122 (Bankr. S.D.N.Y. 2005) (citing *Wellman v. Wellman*, 933 F.2d 215, 218 (4th Cir. 1991) (denying recovery "when the result is to benefit only the debtor rather than the estate")). *See also Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80 (S.D.N.Y. 2008).

On July 31, 2020, Acis filed a 75 page *Omnibus Response to Objection to Proof of Claim of Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (R. 1300-1570). As expected, the response to Highland's argument that Acis could no longer recover avoidable transfers once its creditors were paid was that the Fifth Circuit appeared to reject precisely the same argument in *MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530, 534 (5th Cir. 2012). The Fifth Circuit declined to follow *Adelphia*. *Id*. at 533. Instead, *Mirant* held that "a trustee's right to avoid a transfer is tested at the petition date . . . [and] persist[s] until avoidance will no longer benefit the estate under § 550" even when unsecured creditors are paid in full. *Id*. (citing *Stainaker v. DLC, Ltd.*, 376 F.3d 819 (8th Cir. 2004) and *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800 (9th Cir. 1994)).

The Fifth Circuit cited *Acequia* favorably for its broad interpretation of what constitutes a "benefit to the estate," as to which the Ninth Circuit stated:

DOCS_LA:337434.7 36027/002

Courts construe the "benefit to the estate" requirement broadly, permitting recovery under section 550(a) even in cases where distribution to unsecured creditors is fixed by a plan of reorganization and in no way varies with recovery of avoidable transfers. In several cases, for example, courts have refused to dismiss avoidance actions even though the unsecured creditors had received full distributions under a plan of reorganization.

*Acequia*, 34 F.3d at 811.

Judge Jernigan had addressed the *Mirant* issue in the *Texas Rangers* case. The former debtor, Texas Rangers Baseball Partners ("TRBP") had sued its former ultimate parent, HSG Sports Group ("HSG"), to avoid obligations under an aircraft sharing contract signed on the eve of bankruptcy.  TRBP had paid its creditors in full under a confirmed plan.  HSG argued that TRBP could not avoid the contract because there would be no benefit to the estate.  Judge Jernigan observed Mirant's broad holding: "***Mirant makes clear that 'benefit to the estate' does not hinge on whether a Chapter 5 action will result in a pool of assets being garnered for the benefit of unsecured creditors.***"  *Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Tex. Rangers Baseball Partners)*, 498 B.R. 679, 709 (Bankr. N.D. Tex. 2013) (emphasis added).

As Highland argued in its objection, and as Mr. Dondero emphasizes, the Bankruptcy Case involved facts that *ought* to distinguish it from *Mirant*, *Texas Rangers* and all other cases holding that a "benefit to the estate" persists even after creditors are paid.  (R. 1229-36).  In every such case, Highland argued, there was

-12-

some manner in which former creditors still stood to benefit from the recovery of avoidable transfers, *e.g.*, in *Mirant*, "creditors were paid in stock; thus, the prospect of a more financially sound estate would provide [plaintiff] with standing." *Mirant*, 441 B.R. 791, 803 (N.D. Tex. 2010).  Likewise, in *Texas Rangers*, there were still unpaid obligations to lenders, and "[t]hus, to the extent the equities matter here, it would seem that such equities weigh in favor of finding there to be a plausible "benefit to the estate[.]" *Tex. Rangers*, 498 B.R. at 709.  In a Western District of Texas bankruptcy case, avoidance recoveries were capped to the amount needed to pay innocent creditors.  *Crescent Res. Litig. Tr. Ex rel. Bensimon v. Duke Energy Corp.*, 500 B.R. 464, 481-82 (W.D. Tex. 2013).  In the Highland Objection, Highland argued, avoidance recoveries could not benefit Acis's creditors even indirectly; there would simply be an inequitable windfall recovery to a speculator who had purchased the company looking for a windfall, at the expense of Highland's creditors.  (R. 1234).

But while Highland believed it *should* prevail, it was arguing against a Fifth Circuit holding, following holdings from other courts of appeal, which if taken literally would preclude the objection.  Furthermore, even if the Bankruptcy Court could take equities into account, as *Texas Rangers* suggested it might, those equities might be deemed to favor Acis and Mr. Terry to the extent Mr. Dondero might benefit from disallowance of the Acis Proof of Claim.  Again, Highland

-13-

argued forcefully that Highland's creditors would be the beneficiaries, not Mr. Dondero.  Notably, however, Mr. Dondero argues that he has standing to appeal precisely because he may benefit from disallowance of the Acis Claims.  (Dondero Br. at 9).

Acis's response also raised issues as to each of Highland's other objections. For instance, Mr. Dondero contends that Highland should have stood upon its defense under the "*Bangor Punta* doctrine," (R. 1217) an equitable doctrine that prevents an equity purchaser from recovering against prior management and shareholders for corporate waste that occurred prior to the purchase. *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co*., 417 U.S. 703, 714-17, 94 S. Ct. 2578 (1974); *In re Think3, Inc*., 529 B.R. 147, 185 (Bankr. W.D. Tex. 2015). *Bangor Punta*, however, does not apply to claims that were pending at the time of the acquisition (*Meyers v. Moody*, 693 F.2d 1196, 1208 (5th Cir. 1982)), and Acis argued that the purchase was not final until the Acis Plan became effective, by which time the claims at issue had been asserted.  (R. 1331).  Second, *Bangor Punta* is inapplicable in bankruptcy proceedings brought for the benefit of creditors (*Bangor Punta*, 417 U.S. at 718 n. 15), meaning that the *Bangor Punta* objection effectively had no greater utility than the section 550 "benefit to the estate" argument discussed above.

-14-

By way of further example, in response to Highland's objection that Acis's claims would be barred by the *in pari delicto* defense (R. 1216), Acis argued that "*in pari delicto* does not apply to avoidance actions brought pursuant to § 544," citing *PM Denver, Inc. v. Porter (In re Porter McLeod, Inc.)*, 231 B.R. 786, 794 (D. Colo. 1999).  (R. 1333=35).

Highland believed it had meritorious responses to Acis's arguments.  One could go point by point through Acis's 75 page response and attempt to assess their merits; however, Mr. Dondero has not done so, either below or on appeal, and as discussed below, the Bankruptcy Court was not required to do so either.

**D.**  **Mediation and Settlement**

On August 3, 2020, the Bankruptcy Court issued an *Order Directing Mediation* [Docket No. 912] directing Highland to mediate its disputes with Acis and others before retired Judge Allan Gropper and Sylvia Mayer.  (R. 2189).  After mediation, Highland and Acis agreed to the Settlement on September 9, 2020.  (R. 2193).

The Settlement has the following material terms: (1) allowance of the Acis Proof of Claim in the amount of $23,000,000 as a general unsecured claim; (2) withdrawal of the Highland Claims; (3) a mutual general release, including

-15-

dismissal of the various "Filed Cases"[2] among the parties; and (4) the following payments to be made upon the effective date of a Highland plan of reorganization:

(1) $425,000 to Mr. and Mrs. Terry plus 10% simple interest (calculated on the basis of a 360-day year from and including June 30, 2016), in full and complete satisfaction of the Terry Proof of Claim;

(2) $97,000 to Acis LP, representing legal fees incurred by Acis LP with respect to the NWCC Litigation, in full and complete satisfaction of the Acis LP Proof of Claim; and

(3) $355,000 to Mr. Terry in satisfaction of the legal fees assessed against Highland CLO Funding, Ltd., in the Guernsey Suit.

E.    **The Bankruptcy Court's Consideration and Approval of the Settlement Agreement**

On September 23, 2020, Highland filed its *Debtor's Motion for Entry of an Order Approving Settlement with (A) Acis Capital Management, L.P. and Acis Capital Management GP LLC (Claim No. 23), (B) Joshua N. Terry and Jennifer G. Terry (Claim No. 156), and (C) Acis Capital Management, L.P. (Claim No. 159), and Authorizing Actions Consistent Therewith* (the "Settlement Motion").   (R. 2186-2204).

---

[2] "Filed Cases" is defined in the Release as (i) the Highland Bankruptcy Case; (ii) *Acis Capital Management, L.P., et al. v. Highland Capital Management, L.P., et al*, Case No. 18-03078 (Bankr. N.D. Tex. 2018); (iii) *Motion for Relief from the Automatic Stay to Allow Pursuit of Motion for Order to Show Cause for Violations of the Acis Plan Injunction*, Case No. 19-34054-sgj-11 [Docket No. 593] (Bankr. N.D. Tex. 2020); (iv) *Joshua and Jennifer Terry v. Highland Capital Management, L.P., James Dondero and Thomas Surgent*, Case No. DC-16-11396, pending in the 162nd District Court of Dallas County Texas; (v) *Acis Capital Management, L.P., et al v. James Dondero, et al.*, Case No. 20-0360 (Bankruptcy N.D. Tex. 2020); (vi) *Acis Capital Management, L.P., et al v. Gary Cruciani, et al.*, Case No. DC-20-05534, pending in the 162nd District Court of Dallas County Texas; (vii) *Highland CLO Funding v. Joshua Terry*, [No Case Number], pending in the Royal Court of the Island of Guernsey; and (viii) the Acis Bankruptcy Case.

-16-

The Settlement Motion recounted the facts discussed above and set forth the

standard for approval and the bases for approval thereunder.  It noted in particular

that

> the second factor—the complexity, duration, and costs of litigation—weighs heavily in favor of approving the Settlement Agreement and the Release. As this Court well knows, the litigation between Acis, the Terry Parties, and the Debtor has been proceeding for years in this Court and elsewhere and has cost the parties millions in legal fees and untold amounts of time and energy that could have (and should have) been better focused elsewhere. If the Settlement Agreement and the Release are not approved, then the parties will revert to the status quo ante. In this case, the status quo ante is constant, perpetual, costly, and acrimonious litigation that stands to derail not only the confirmation of the Plan in this case but the closing of the Acis Bankruptcy Case.

(R. 2197).

Highland asserted that approval "is in the best interests of all creditors. The

Acis Proof of Claim was filed for 'at least' $75 million, and that $75 million was

substantially below what Acis contended its claim was actually worth (which, on

information and belief, was in excess of $200 million with punitive damages)."

(R. 2198).

The Bankruptcy Court held a two day evidentiary hearing on October 20-21,

2020.  (R. 2791-3094). In his testimony relating to the Settlement (commencing at

R. 2968), Mr. Seery testified to extensive efforts to investigate the claims and

negotiate a settlement.  An experienced attorney, he had reviewed the arbitration

-17-

decision, *Mirant* and other cases, and memoranda from counsel (R. 2971-73) and he had gone through the defenses to the Acis Claims and taken into account the risks presented by prior rulings in the Acis Bankruptcy Case.  (R. 2980).  Mr. Seery testified that the Bankruptcy Court's findings concerning Mr. Dondero's lack of credibility were important, *id*., and that while there were some defensible explanations for the transactions, "like a lot of the things in the Acis case, the timing did not help with respect to the equities tilting in favor of Highland.  They tilted more towards Acis and Mr. Terry."  (R. 2982).  He believed that the Terry Claim for the taking of retirement funds should have been settled long ago for full value.  (R. 2983-84).  He observed that although the obligation to pay legal fees in the Guernsey Suit lay with Highland Funding, Highland had an advisory agreement with Highland Funding and there was an argument Highland could have stopped the litigation.  (R. 2984).  In sum:

> [W]e went through a rigorous examination of the risks and rewards of the litigation. The timing, the costs overall to the estate, and the claims that Acis and Mr. Terry had. The challenge that we had is that, where we are in the case, it's not just creditors that are at – potentially on the other side, the creditors of Highland on the other side. And that means that there's a risk that a finder of fact, looking at the totality here, based upon Mirant and the subsequent cases, when you balance the equities, they may not always find that they tilt in Highland's favor. So the risks that they would tilt against us was material, and that left us open to potentially a significant award.

(R. 2986).

-18-

Mr. Seery evinced a clear understanding of the *Mirant*/Section 550 issue, *i.e.*, the risk that avoidance recoveries might be allowed in order to 'restore the estate' even after creditors are paid, and the risk that the equities might be deemed to favor Mr. Terry and Acis:

> In sum, when you look at *Mirant* and the related cases, they do talk about restoring the estate. And so while we -- we believed an argument was I think strong that the initial injunction in Acis quote/unquote made Mr. Terry whole, there's a strong argument to be made that the estate has claims and that the owner of an estate who buys it through a plan open to everybody is entitled to try to benefit from those claims. So the recovery for the benefit of that enterprise is permitted, and that just happens to be what the law is.
>
> Moreover, while we said it was inequitable, there's a counterargument that Mr. Terry would make, which is that he's been -- he had a claim that could have been settled easily and could have been paid off and it wasn't. Instead, there was a long litigation. And it came about because assets from Acis were pulled out of Acis. It's a pretty straightforward factual recitation that we get from the prior decisions of this Court. And there's a strong equitable argument that Mr. Terry makes that his life has been turned upside down and there's a lot of damage that comes from that. Now, we have, as we lay out, what we thought were meritorious defenses, but they do rely a lot on the equities.

(R. 3005-06).

At the conclusion of the hearing, the Bankruptcy Court issued a bench ruling approving the Settlement. (R. 3078-3083). The bench ruling reflects that Judge Jernigan was operating under a correct understanding of the legal requirements. Citing Fifth Circuit decisions, she summarized the law as follows:

-19-

> I am to look at, obviously, whether the proposed compromise is fair and equitable and in the best interest of creditors when considering probability of success in future litigation, with due consideration for the uncertainty of law and fact; when considering the complexity and likely duration of future litigation and any attendant inconvenience and delay; and all other factors bearing on the wisdom of the compromise.
>
> Case law also talks about the Court probing into whether a settlement is within the range of reasonableness, and obviously the Court should consider the paramount interests of creditors.
>
> So, here, giving all due consideration of the record before me and the very eloquent arguments, I am going to approve the compromise today.

(R. 3079).[3]

The Bankruptcy Court found Mr. Seery's testimony to be "very credible and compelling in connection with the Acis and Terry settlements." (R. 3080).

> Among other things, I believe his testimony reflected a deep understanding of the risks and rewards of further litigation and the uncertainty that there was in both the law and the fact. He mentioned his understanding of the *Mirant* holding and how that absolutely posed some risks for the estate in challenging the claims of the reorganized Acis. He mentioned what I consider significant due diligence that he performed. He mentioned not only reading many of the rulings of this Court throughout the tortured history of the Acis bankruptcy, but he mentioned meeting with the board members. In fact, meeting with Mr. Terry and Acis's professionals. He picked out certain of the issues, the fact issues, the $10 million note transfer that

---

[3] Likewise, the Settlement Order states in part that the Bankruptcy Court granted the Settlement Motion after "having, analyzed, for the reasons stated on the record, (1) the probability of success in litigating the claims subject to Settlement Agreement and Release, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise, including: (i) the best interests of the creditors, with proper deference to their reasonable views; and (ii) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. . . ." (R. 31).

-20-

was argued to be a fraudulent transfer. He described the disputes regarding the changing of the fee structure imposed by Highland or Highland entities on Acis, and he expressed concerns regarding the cost of litigating all of that.

He spoke in depth about Mr. Terry's claims regarding his retirement funds, and said he thought it was a pretty straightforward win for the Terrys that he thought should have been settled years ago for full value.

He mentioned his knowledge about the Guernsey litigation, that being a jurisdiction where loser pays. So that was sort of an open-shut one as far as he was concerned. And he talked about the Acis GP proof of claim in some depth, regarding the lawsuits in New York.

So, again, I find that he was very compelling and his testimony reflected significant due diligence.

Now, the next thing I want to highlight that is very compelling to me in deciding I should approve this settlement is -- and I probably should have mentioned this first and foremost -- this was a mediated settlement. This is certainly some indication of its good faith and arm's-length nature, and certainly is a point in favor of the wisdom of the settlement, given that we had two very respected co-mediators, retired Judge Gropper from the Bankruptcy Court of the Seventh District of New York. Ms. Mayer was a partner at Weil Gotshal with a very impressive career background. And so it, again, it is a point very much in favor of the bona fides of this settlement. So I cannot overstate that one.

(R. 3080-81).

The Bankruptcy Court also observed that the Settlement could hasten the confirmation of a plan of reorganization:

. . . I do think the settlement enhances the likelihood of confirmation of a plan in the near future. . . . And that's a big

> factor in my mind. I'm supposed to look at all factors bearing on the wisdom of the compromise, and I think the compromise enhances the prospect of a reorganization sooner rather than later.

(R. 3083).[4]

## SUMMARY OF ARGUMENT

Mr. Dondero contends the Bankruptcy Court abused its discretion by approving the Settlement because: (1) it "did not independently consider Highland's probabilities of success in litigating the Acis Claim and form an independent judgment of the complexity, expense and likely duration of litigating the Acis Claim" (Dondero Br. at 11); (2) it also failed to do so as to the Highland Claims against Acis (*id*. at 16); (3) the Settlement is not in the best interests of the estate (Br. at 18); (4) "[t]he cost of summary adjudication of the Acis Claim is minimal compared to the potential benefit" (*id*. at 21); and (5) the Settlement "is not fair and equitable because it does not satisfy the Absolute Priority Rule" (*id*. at 25).

The Bankruptcy Court did not abuse its discretion in approving the Settlement. The Bankruptcy Court was not required to make detailed findings to

---

[4] Other objections to the Settlement Motion were withdrawn or resolved. The objection to the Motion filed by Patrick Hagaman Daugherty at Docket No. 1201 was withdrawn on the record during the hearing on the Motion. The reservations of rights filed by Highland CLO Funding, Ltd., CLO Holdco, Ltd., HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P. and HarbourVest Partners L.P. filed at Docket Nos. 1177, 1191, and 1195 (collectively, the "Reservations ") are resolved based on the Debtor' s representations on the record, made without objection, that (a) the conditions precedent in Section 1(c) of the Settlement Agreement will not occur and therefore, the Debtor will not, pursuant to the Settlement Agreement, transfer all of its direct and indirect right, title and interest in Highland HCF Advisor, Ltd. to Acis or its nominee, and that (b) none of the parties asserting any of the Reservations are bound by the Release.

-22-

demonstrate that it had considered the risks and costs and complexity and duration of continued litigation of the Acis Claim or the Highland Claims, as Mr. Dondero appears to believe necessary.  Rather, the law is that so long as a bankruptcy court applies the correct standard, its decision to approve a settlement may not be disturbed unless the record fails to support it.  Here, the Bankruptcy Court expressly applied the correct standard, and the record abundantly supported its decision.  While the Independent Board's thorough investigation and the mediation were probative of the bona fides of the Settlement, Judge Jernigan had a detailed knowledge of the record even before the two-day evidentiary hearing.  In short, the Bankruptcy Court was fully advised in the factual and legal premises of the settlement.

On the salient issue – whether the record supports the finding that the Settlement was reasonable – Mr. Dondero says virtually nothing.  He simply repeats points made in the Highland Objection without mounting any substantive response to the arguments made in Acis's 75 page response or the risk analyses to which Mr. Seery testified.  Mr. Dondero resorts to grossly mischaracterizing Mr. Seery's testimony to suggest that he was motivated by "empathy towards Mr. Terry personally" (Dondero Br. at 20), rather than by his concern that the Bankruptcy Court's harsh criticism of Mr. Dondero's conduct and credibility might

put Highland on the losing end of any decision involving the equities notwithstanding Highland's effort to shift the focus.

Mr. Dondero's fourth argument – that it would be economical and beneficial to litigate the Highland Objection to summary judgment or to conclusion – is equally unfounded. For one thing, the Bankruptcy Court flatly rejected Professor Rapaport's estimate of litigation costs as "way, way low" on the facts of these cases. (R. 3082). It is irrelevant anyway. The outcome of litigation is uncertain, and the settlement terms reflect a significant chance of success by Highland in the litigation. Regardless of cost, there is no universe in which Mr. Dondero's reflexive preference for litigation over settlement could be so obviously superior to Highland's business judgment to obtain a very substantial discount without further litigation that it would be an abuse of discretion to approve the latter.

Finally, the comparatively minimal cash payments in the Settlement do not violate the Absolute Priority Rule. Mr. Dondero did not raise the issue below, they are legally permissible, they are nominal within the economics of this case, and they were not objected to by any party that would be affected by them, and Mr. Dondero has no standing to assert the rights of persons who did not object.

The Settlement was an excellent outcome and its approval is beyond reproach. It is patently impossible on this record to form a "definite and firm

conviction that a mistake has been committed." Accordingly, the Bankruptcy Court's decision should be affirmed.

## **ARGUMENT**

A.  **The Bankruptcy Court Was Not Required to Make Express Findings Demonstrating Its Independent Analysis of the Risks, Costs, Complexity and Likely Duration of Litigation of the Acis Claim or the Highland Claims**

Mr. Dondero contends the Bankruptcy Court "did not independently consider Highland's probabilities of success in litigating the Acis Claim and form an independent judgment of the complexity, expense and likely duration of litigating the Acis Claim" (Dondero Br. at 11) or the Highland Claims (*id*. at 16). He bases that contention on (i) Judge Jernigan's remarks in the bench ruling crediting Mr. Seery's testimony as reflecting a thorough analysis of the relevant factors, and (ii) the absence of express findings manifesting that the Bankruptcy Court had formed an independent opinion concerning those factors rather than simply approving Mr. Serry's due diligence.[5]

A bankruptcy court is not required to make detailed findings on every issue in controversy to prove that it independently considered the merits of a settlement. The law requires only that it appear that the court was applying the correct

---

[5] "Here, the Bankruptcy Court relied exclusively on—and deferred to—the Debtor's opinion as to the probability of success in the litigation without conducting its own independent and objective analysis as to the probability of success of the litigation. (R. 003078-3083) Nor did the Bankruptcy Court make any determination as to the probability of success in the litigation or issue any finding that the probability of success favored the settlement. (R. 003078-3083). This was an abuse of discretion."  (Dondero Br. at 14).

standard; if so, its decision will stand if the record supports it.  The Bankruptcy Court specified that it understood the correct standard to apply to the Settlement, and the record abundantly supports its decision to approve it.

A bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.  *See, e.g., In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).  In making this determination, courts look to the following factors:

- probability of success in the litigation, with due consideration for the uncertainty of law and fact;

- complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

- all other factors bearing on the wisdom of the compromise, including (i) "the paramount interest of creditors with proper deference to their reasonable views."

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997) (citations omitted).

As quoted above, the Bankruptcy Court cited this precedent and stated the law precisely and correctly.  (R. 3079).

To satisfy Mr. Dondero's demand for "determination[s] as to the probability of success in the litigation" and "finding[s] that the probability of success favored the settlement" would require the Bankruptcy Court to make express findings on each issue raised in the hundreds of pages of pleadings and briefing on the claims

-26-

and defenses at issue.   The law does not require such a herculean effort (and, notably, Mr. Dondero does not undertake it).   Rather, as this Court previously observed, "[a] reviewing court may assume that the trial court made an implied finding consistent with its general holding so long as the implied finding is supported by the evidence." *Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P.)*, 604 B.R. at 506 (internal citations and quotation marks omitted).

> While specific findings of fact by a bankruptcy judge and a clear outline of his analysis in approving the settlement are helpful, we decline to impose such a high standard. Mandating that a bankruptcy judge write a full opinion on the merits of every settlement would only serve to slow the entire process and waste scarce judicial resources. Settlement is intended to conserve such resources, and is therefore encouraged. All that is required is an indication that the Court fairly considered the merits of the compromise, and did not abuse his discretion in approving it.

> Here, although the bankruptcy judge did not explicitly state his reasons for approving the settlement, his statements throughout the hearing indicate that he had weighed the required factors. The judge had considered the likely outcome of litigation, the delay of further litigation, and impact on creditors. The bankruptcy court concluded that the only way that the interest holders would realize any return on their investments would be to continue to operate the wells and distribute income according to the settlement agreement. To hear evidence on the claims would prolong the proceeding, and the bankruptcy judge clearly thought the secured creditors would prevail.

*In re Heissinger Res., Ltd.*, 67 B.R. 378, 381-82 (C.D. Ill. 1986).  So long as the bankruptcy court applies the correct standard, the decision stands if the record supports it.

-27-

[T]he court merely stated, after citing the appropriate factors, "Based on that standard, I believe that there is basis to approve the settlement today." [record reference omitted] While this statement is conclusory in nature, conclusory findings do not necessarily require reversal if the record supports the trial court's ultimate conclusion. *Simeonoff v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001); [citations omitted]

Moreover, "[i]f, from the facts found, other facts may be inferred which will support the judgment, such inferences should be deemed to have been drawn by the [trial court]." *Grover Hill Grain Co. v. Baughman-Oster, Inc.*, 728 F.2d 784, 793 (6th Cir. 1984). *Accord, Caterino v. United States*, 794 F.2d 1, 6 n.2 (1st Cir. 1986); *Brown v. Lykes Bros. S.S. Co.*, 484 F.2d 61, 62 n.4 (5th Cir.1973).

Here, the bankruptcy court's comments at the Compromise Hearing demonstrate that the court was addressing the *A & C Props.* factors when it expressly found that the applicable standard for approving the settlement had been satisfied. We can infer from this finding that the court determined, under the *A & C Props.* factors, the Compromise Motion should be granted. In short, the absence of specific findings as to each of the *A & C Props.* factors does not by itself justify reversal, so we will turn our attention to the Gibsons' second argument – that there was insufficient evidence (or no evidence) in the record to support the court's conclusion that the Compromise Motion should be granted.

*Gibson v. Speier (In re Gibson)*, No. CC-11-1028-MkKiD, 2011 Bankr. LEXIS 4341, at *16-18 (B.A.P. 9th Cir. Aug. 3, 2011) (citations and record references omitted); *see also Brown v. Lykes Bros. S.S. Co.*, 484 F.2d 61, 62 n.4 (5th Cir. 1973) ("where a finding of a subsidiary fact inheres in the finding of an ultimate fact, a remand is not required.") (citation omitted).

-28-

The proceedings in this case are a very far cry from "mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law" criticized in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 434, 88 S. Ct. 1157 (1967). If the record contains "adequate facts to support the decision of the trial court to approve the proposed compromise, a reviewing court would be properly reluctant to attack that action solely because the Court failed adequately to set forth its reasons for the evidence on which they were based." *In re Flight Transp. Corp. Sec. Litig.,* 730 F.2d 1128, 1136 (8th Cir. 1984) *(quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 at 437).

## B.     <u>The Bankruptcy Court Was Extremely Familiar with the Claims at Issue</u>

Mr. Dondero's claim that the Bankruptcy Court failed to form an independent opinion, but instead relied exclusively on Mr. Seery's testimony in approving the settlement, is particularly ironic in view of Judge Jernigan's long history with these cases. In fact, Mr. Dondero emphasized the Bankruptcy Court's extensive familiarity with the claims being settled. In his response to the Settlement Motion, Mr. Dondero stated:

> There is no question that this Court already has a unique understanding of the claims and facts underlying the litigation.

> For example, prior to the Debtor's bankruptcy filing, the Court prepared a lengthy report and recommendations to the District Court as to the pending motions to withdraw the reference. While the Debtor Objection raises new legal theories and defenses to the Acis Claim, the Court should be able to analyze those relatively promptly due to its familiarity with the parties, facts, and causes of action involved.

(R. 2348).  The Bankruptcy Court's experience with these claims goes back even further: it heard evidence regarding the claims at issue in connection with the dispute over Mr. Terry's involuntary bankruptcy petition against Acis, at which time it made the findings (quoted above) strongly suggesting that it considered the claims that Highland and Mr. Dondero had "denuded" Acis to have merit, finding that Mr. Terry "had a good faith belief that the Alleged Debtors and those controlling them were engaged in an orchestrated, sophisticated effort to denude the Alleged Debtors of their assets and value (i.e., transferring assets and rights for less than reasonably equivalent value)." *Acis Capital Mgmt.*, 584 B.R. at 531.  As quoted, above, the Bankruptcy Court expressly found in its order confirming the Acis Plan that Acis had a substantial likelihood of success on the merits of its claim to avoid the ALF PMA transfer.  (R. 415).

Not only did the Bankruptcy Court have detailed knowledge concerning the facts underlying the Acis Claims (and had made its views plain), it ***also*** had familiarity with the *Mirant*/section 550 issues raised in the Highland Objection, having addressed those very issues in the *Texas Rangers* case, as noted above.

-30-

In short, Judge Jernigan did not rely on Mr. Seery for an understanding of the facts and the issues.

## C. **The Record Supported Approval of the Settlement**

It is beyond genuine dispute that the record contained ample support for the Bankruptcy Court's approval of the Settlement. Indeed, Mr. Dondero has remarkably little to say to support a different conclusion. In arguing that the Settlement is not in the best interests of the estate, he asserts that the "where the risk of litigating is worth the reward, a settlement is unlikely to be fair and equitable. Here, Highland is giving up the opportunity at a $0 Acis Claim in exchange for removing the risk of the claim being $75 million. That risk aversion cost $23 million, plus the sunk cost of the expenses to get to settlement." (Dondero Br. at 18-19).

Setting aside Acis's counsel's stated intention of seeking $200 million in damages, Mr. Dondero fails completely to demonstrate why settling the Acis Claims of over $75 million by allowing a claim of $23 million is unreasonable. He asserts that it is "tantamount to Highland giving away $23 million" (*id*. at 20), but that is nonsensical. It is "only giving away $23 million" if there is no way Acis will receive $75 million (and if allowed claims receive a distribution of 100 cents on the dollar). Yet nowhere does Mr. Dondero grapple with the facts that (1) the Bankruptcy Court clearly saw the Acis Claims as meritorious, (2) the argument

-31-

that Acis lacked standing to recover avoidances depends on distinguishing controlling authority (*Mirant*); and (3) even if *Mirant* is not preclusive, and the result were to turn on the equities, as in *Duke Energy*, the Bankruptcy Court's stated perceptions of Mr. Dondero's conduct and credibility was such that those equities might be deemed to favor Mr. Terry and Acis, notwithstanding Highland's best efforts to shift the focus to Highland's creditors.

Mr. Dondero resorts to mischaracterizing the testimony to suggest that Highland put Mr. Terry's interests above its own, asserting that "Mr. Seery also testified repeatedly that empathy towards Mr. Terry personal (rather than Acis) was a primary motivation driving [Highland] to settle with Acis." *Id.* at 20. The record reference (R. 3005-07) (quoted above) shows nothing of the sort. There and elsewhere, Mr. Seery consistently testified that there was a risk that the equities may be perceived to favor Mr. Terry and Acis, given the Bankruptcy Court's stated views on Mr. Dondero's conduct and credibility.

Mr. Dondero then asserts that "the record reflects that [Highland] was not liable for the fees in the Guernsey litigation but it nevertheless agreed to compromise those and pay Mr. Terry personally," though he had no claim, because "it was something that was really important to Mr. Terry." (Dondero Br. at 20). Actually, Mr. Seery testified that Highland "has an advisory agreement [with Highland Funding] [a]nd Acis and Mr. Terry took the view that we had the ability

-32-

to stop that litigation." (R. 2985). Mr. Seery then noted "it was something that was really important to Mr. Terry. And for the amount of the settlement, in order to get the overall deal done, we agreed that we would compromise that amount, his statutory amount, and then he could litigate for his full fees." (R. 2985-86). In other words, he disagreed with Mr. Terry but was willing to pay a certain amount to get the overall deal done, *i.e.*, he settled it.

Mr. Dondero concludes: "At a minimum, if Highland believed that the bulk of the Acis Claim could be dismissed after a ruling on standing, then it would be more prudent for the estate to pursue that ruling instead of allowing a $23 million claim." (Dondero Br. at 21). But that is, again, a false equation. Highland settled the Acis Claims of $75 million or more, for allowance of a $23 million claim.

Next, Mr. Dondero attempts to topple the Settlement by isolating a subset of the settled claims for which he claims the record was inadequate to permit the Bankruptcy Court to form an independent opinion. Specifically, he argues that there was no evidence in the record concerning the Highland Claims – which are withdrawn in the settlement – because those proofs of claim are not in the record. (Dondero Br. at 16) The implication is that the Highland Claims were so valuable that the failure to address them specifically is an omission so significant as to deprive the Bankruptcy Court of an evidentiary basis for approving the Settlement.

-33-

The implication is inaccurate and the argument disingenuous.  The Highland Claims were inextricably linked to the Acis Claims.  They are claims for fees under Sub-Advisory and Shared Services Agreements that Acis alleged were inflated as part of the alleged effort to divert assets from Acis to Highland (such as by increasing Sub-Advisory Agreement rates from 5 bps to 20 bps before the Acis Bankruptcy Case).  In other words, they are the flip side of the Acis Claims.  In fact, these issues *are* in the record, as they are discussed in the Acis Complaint attached to and incorporated in its proof of claim.  (R. 2442-51).

> The causes of action asserted against Highland Capital herein, which dispute the amounts charged by Highland Capital, directly implicate the validity of, and support the disallowance of, the Administrative Claim (just as they refute Highland Capital's purported prepetition claims). . . .  If the Plaintiffs prevail on the causes of action against Highland Capital as set forth herein, the basis for allowance of the Administrative Claim would also be invalidated.

(R. 2451).  The Bankruptcy Court expressly noted on the record that the Highland Claims were being compromised as part of the settlement (R. 3028) and, as noted above, Mr. Dondero conceded that the Bankruptcy Court "already has a unique understanding of the claims and facts underlying the litigation."  Furthermore, Mr. Dondero did not make the argument in the Bankruptcy Court: his response to the Settlement Motion (R. 2340-49) makes no reference whatsoever to the Highland Claims, nor did his cross-examination of Mr. Seery raise the issue.  The attempt to elevate the import of the Highland Claims on appeal is belated.

-34-

On this record, the Settlement is unimpeachable.  The Acis Claims, in the alleged amount of $75 million, based on claims to reverse the "denuding" of Acis that the Bankruptcy Court had already found were likely to succeed, along with the Terry Claims and a variety of other litigation against Highland and its employees, were resolved in exchange for an allowed claim of $23 million and cash payments of less than $1 million.  These terms reflect that the Highland Objection produced a very substantial reduction of the Acis Claims.  There is no basis in the record for a finding that the continued litigation favored by Mr. Dondero was not just a superior strategy, but so patently superior that the Bankruptcy Court's approval of the Settlement was an abuse of discretion.

## D.     Mr. Dondero's Arguments Concerning the Costs and Benefits of Further Litigation Are Factually Unfounded and Legally Irrelevant

The heading to Mr. Dondero's next argument is that "the cost of summary adjudication of the Acis Claim is minimal compared to the potential benefit" (Dondero Br. at 21), but he proceeds to discuss the cost of litigating the Acis Claims all the way through trial, asserting that "the cost associated with Highland pursuing its defense against the Acis Claim is comparatively low."  *Id*.  Mr. Dondero submitted an affidavit from Professor Nancy B. Rapaport offering an opinion that continued litigation of the Acis Claims would cost between $350,000 and $1.1 million.

DOCS_LA:337434.7 36027/002

The Bankruptcy Court disagreed with Professor Rapoport's opinion:

> A few other points I will make. In looking at the risks and rewards and likely expense and inconvenience of further litigation, while Professor Rapoport estimated maybe $350,000 to $1.1 million of fees might be incurred for future litigation of the issues between Highland and Acis, and while I respect her views tremendously -- I know she's been a fee examiner in many, many cases and really has some bona fides in speaking about fees in bankruptcy cases -- I tend to think that is an extremely low estimate. And I can't separate from this analysis my own experience and knowledge with how litigious and expensive things have historically been between Acis and Highland.
>
> I cannot remember the final fee application amounts of the Chapter 11 Trustee and his professionals, but I know that in a year-plus of the Acis case, the fees were much, much larger than this amount, and I seem to remember that at least Foley Lardner had a very, very large unsecured claim in this case related to its fees representing Highland v. Acis, millions of dollars.
>
> So, with complete respect to Professor Rapoport, I believe with all my heart that that number is way, way low as far as future fees and expenses.

(R. 3082).[6]

Mr. Dondero asserts that "it is unclear whether the Bankruptcy Court relied on evidence in the record to support this belief," rather than "its knowledge of the fees incurred generally in the separate Acis case. . . ."  (Dondero Br. at 23).  But a court does not need evidence to reject an expert's opinion.  In fact, Judge Jernigan was expressly referring to "how litigious and expensive things have historically

---

[6] Although counsel had represented that Mr. Dondero would be willing to pay those fees, the Bankruptcy Court noted there was no proof of any such commitment.  (R. 3082).

been between Acis and Highland" and to fees incurred in the litigation. There is no basis for second-guessing the Bankruptcy Court's estimate of fees in the cases before it. That does not stop Mr. Dondero from trying. He argues "it would be inconsistent and not supported by the record for one to assert that the litigation of just the Acis Claim would far exceed Professor Rapoport's top-end estimate of $1.1 million. *If Highland's defenses to the Acis Claim are as strong as it articulated in its Objection to the Acis Claim then the litigation costs would be money well spent*." *Id.* at 25 (emphasis added).

The final sentence bears emphasis because it speaks to the untethered logic of the argument. ***Of course*** Highland articulated its defenses to the Acis Claims strongly. That is what litigators do. And if the defenses succeeded, the money would indeed be well spent. At bottom, therefore, Mr. Dondero's arguments rest on an assumption that the defenses would have succeeded, which he makes without any meaningful attempt to justify it. That assumption is intrinsically too speculative to form the basis of a "firm conviction that a mistake has been made" so as to find an abuse of discretion, and that is so whether the cost is $1.1 million or double that amount.

## E.   The Settlement Does Not Violate the Absolute Priority Rule

Finally, Mr. Dondero contends the Settlement does not satisfy the Fifth Circuit's "fair and equitable" standard because it violates the absolute priority rule.

-37-

Citing *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984), he contends that the payments to be made to Acis and the Terrys on the effective date of a Highland plan violate the absolute priority rule because they will be paid "ahead of senior claims and other general unsecured claims outside of the priority scheme of the Bankruptcy Code." (Dondero Br. at 25). Mr. Dondero did not make this argument below. (R. 2340-49).[7]

*AWECO* addressed whether "in the period prior to confirmation of a reorganization plan must the bankruptcy court apply the fair and equitable standard in considering a priority creditor's objections to a settlement[]." *Id*. The Fifth Circuit answered that question by stating:

> [bankruptcy's] underlying policies leads us to make a limited extension of the fair and equitable standard: A bankruptcy court abuses its discretion in approving a settlement with a junior creditor unless the court concludes that priority of payment will be respected as to objecting senior creditors.

*Id*. at 299.

*AWECO* is irrelevant. The Settlement is not with a junior creditor and Mr. Dondero is not a senior creditor. No senior creditors objected, and Mr. Dondero has no standing to assert their rights. *In re Cypresswood Land Partners, I*, 409 B.R. 396, 418 (Bankr. S.D. Tex. 2009) (a party "only has standing to object to provisions of the Amended Plan that directly affect its interest."). To the extent

---

[7] Another general unsecured creditor, Patrick Daugherty, raised the issue below. Mr. Dondero did not join in that objection, and Mr. Daugherty withdrew his objection.

-38-

Mr. Dondero even has a general unsecured claim,[8] it would be, at best, equal in priority to the settled claims that are to be paid on the effective date of a Highland plan.  His (unmeritorious) objection would be that he is entitled to equal treatment under 11 U.S.C. §§ 1123(a)(4).  But *AWECO* does not state that section 1123(a)(4) applies to settlements, or that settlement payments cannot be made independent of a plan of reorganization.

Instead, courts have found that "Section 1123(a)(4). . . under its plain language. . . applies only to a plan of reorganization and therefore not to pre-confirmation settlements. . . ."  *Energy Future Holdings Corp. v. Del. Trust Co.*, 648 Fed. Appx. 277, 283 (3d Cir. 2016).  So while egregiously disparate treatment may be cause to reject a settlement, it is just one consideration; a court may approve a settlement that provides for disparate treatment of similarly situated creditors when it has grounds to do so.  *Id*. at 284.  In fact, *Energy Future* allowed creditors to receive payment outside of a plan of reorganization pursuant to a settlement agreement.  *Id*. at 290.

The Bankruptcy Court has permitted payments outside of a plan to be made in this case, including in connection with the settlement of a claim.  (R. 6008).  It clearly did not abuse its discretion in permitting such payments.  The Settlement reduces the Acis Claims from $75 million or more to an allowed general unsecured

---

[8] He filed a contingent indemnification claim that would certainly be subordinated or disallowed were it to become noncontingent.

DOCS_LA:337434.7 36027/002

claim of $23 million. The payments at issue are less than $1 million in the aggregate, they represent a discount on those claims, and they are not to be made until the effective date of a Highland plan of reorganization. Mr. Terry is now the principal of Acis, he and Mrs. Terry assert claims against Highland, and the resolution of as many matters as possible was manifestly in the best interests of the estate. Finally, the Settlement ultimately had the support of all creditors and parties in interest except Mr. Dondero.

## **CONCLUSION**

Approval of the Settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure was not an abuse of discretion. Accordingly, the Bankruptcy Court's decision should be affirmed.

-40-

Dated:  May 5, 2021

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
(*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084)
(*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326)
(*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992)
(*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569)
(*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

-41-

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 8015</u>

This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(ii) because, according to Microsoft Word, it contains 9,882 words, excluding the portions of the document exempted by Fed. R. Bankr. P. 8015(a)(7)(B)(iii).

By: <u>*/s/ Zachery Z. Annable*</u>
Zachery Z. Annable

-42-