Case No. 3:20-cv-03390-X

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

In re: Highland Capital Management, L.P.,
*Debtor.*

James Dondero,

*Appellant*,

v.

Highland Capital Management, L.P., *et al.*,

*Appellee.*

On Appeal from the United States Bankruptcy Court for
the Northern District of Texas, Case No. 19-34054
Hon. Stacey G.C. Jernigan, Presiding

**APPELLANT JAMES DONDERO'S RESPONSE TO APPELLEE'S
MOTION TO DISMISS APPEAL AS CONSTITUTIONALLY MOOT**

John T. Wilson IV
Bryan C. Assink
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

**ATTORNEYS FOR APPELLANT JAMES
DONDERO**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...................................................................................................1

TABLE OF AUTHORITIES .............................................................................................2

INTRODUCTION .............................................................................................................3

BACKGROUND ...............................................................................................................5

ARGUMENT .....................................................................................................................9

    A.   Legal Standard ......................................................................................................9

    B.   Mr. Dondero Meets the "Person Aggrieved" Standard ......................................10

CONCLUSION ................................................................................................................16

REQUEST FOR JUDICIAL NOTICE ............................................................................17

PRAYER ..........................................................................................................................18

CERTIFICATE OF SERVICE ........................................................................................18

CERTIFICATE OF COMPLIANCE WITH RULE 8013 ...............................................19

## TABLE OF AUTHORITIES

**Cases**

*In re Cajun Elec. Power Coop., Inc.*,
 69 F.3d 746 (5th Cir. 1995) ....................................................................... 9, 11

*In re Coho Energy, Inc.*,
 395 F.3d 198 (5th Cir. 2004) ............................................................................ 9

*Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*,
 806 F.3d 363 (5th Cir. 2015) ............................................................................ 9

*Furlough v. Cage (In re Technicool Sys., Inc.)*,
 896 F.3d 382 (5th Cir. 2018) ............................................................................ 9

*In re Gulf States Long Term Acute Care of Covington, L.L.C.*,
 2014 U.S. Dist. LEXIS 13719 (E.D. La. 2014) .................................. 10, 11, 12

*Halo Wireless, Inc. v. Alenco Communs. Inc. (In re Halo Wireless, Inc.)*,
 684 F.3d 581 (5th Cir. 2012) .......................................................................... 17

*Kitty Hawk Aircargo, Inc. v. Chao*,
 418 F.3d 453 (5th Cir. 2005) .......................................................................... 17

**Rules**

FED. R. BANKR. P. 9019 .................................................................................... 7, 15

Appellant James Dondero ("Appellant" or "Mr. Dondero"), in accordance with Federal Rule of Bankruptcy Procedure 8013 (the "Bankruptcy Rules") and Local Rule 7.1, hereby files this response to the Motion to Dismiss Appeal as Constitutionally Moot (the "Motion") filed by Appellee Highland Capital Management, L.P. ("Appellee" or "Debtor"). For the reasons set forth below, this Court should deny the Motion.

## INTRODUCTION

Through the Motion, the Debtor seeks to prevent appellate review of the bankruptcy court's order approving the Debtor's settlement with Acis[1] and Mr. Terry. Focusing solely on the fact that Mr. Dondero no longer has any proofs of claim pending before the bankruptcy court, the Debtor myopically asserts that Mr. Dondero therefore lacks standing to continue his appeal of the 9019 Order[2] under the Fifth Circuit's "person aggrieved" standard. But this presents the Court with an incomplete and misleading picture of Mr. Dondero's involvement in the bankruptcy case and his standing to challenge the 9019 Order on appeal.

In October 2021, Marc Kirschner, the Litigation Trustee of the Litigation Sub-Trust established under the Debtor's confirmed plan of reorganization, commenced

---

[1] "Acis" means Acis Capital Management, L.P. and Acis Capital Management GP, LLC.

[2] As defined below.

an adversary proceeding against Mr. Dondero and a number of other defendants.[3] In the complaint, the Trustee incredibly seeks to hold Mr. Dondero personally liable for **all** debts incurred by the Debtor, whether pre- or post-petition and specifically including the inflated and unjustified amounts awarded to Acis and Mr. Terry under their settlement with the Debtor that is at issue in this appeal. Among other things, the Trustee asserts in the complaint that "Dondero willfully and wantonly caused HCMLP [the Appellee] to incur over $23 million in liability to Acis and Terry."[4] The Trustee also blames Mr. Dondero for every single dollar of allowed claims against the Debtor in this case ("these breaches resulted in more than $350 million in allowed claims against HCMLP") and even for all professional fees incurred by the estate in this case ("HCMLP has incurred in excess of $40 million in professional fees . . . which was necessitated solely as a result of Dondero's misconduct.") based on theories of breach of fiduciary duty and alter ego.[5]

By throwing the kitchen sink at Mr. Dondero in the complaint, the Trustee has made Mr. Dondero financially interested in every single claim and every single dollar that is incurred or spent by the Debtor's estate. While it is certainly the Trustee's prerogative to plead broadly and generally, the Debtor and the Trustee

---

[3] *See* Bankr. Dkt. No. 2934, Adv. Dkt. 1 in Adv. Proc. No. 21-03076.

[4] Bankr. Dkt. No. 2934, para 201.

[5] *Id.* at paras. 197 and 207.

cannot have it both ways. By making Mr. Dondero a litigation target and scapegoat for all of the estate's liabilities—and specifically attempting to make Mr. Dondero liable for the amounts awarded under the Debtor's settlement with Acis and Mr. Terry—the Trustee has made Mr. Dondero financially interested in the reasonableness and propriety of the settlement approved under the 9019 Order. It would be inequitable if Mr. Dondero were not allowed to challenge the initial reasonableness and propriety of a liability that the estate seeks to hold against him. For these reasons, Mr. Dondero is a "person aggrieved" by the 9019 Order and has standing to pursue this appeal. The Motion should be denied.

## BACKGROUND

On October 16, 2019, Highland filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. (R. 000053)

On December 31, 2019, Acis filed a proof of claim (the "Acis Claim") asserting claims of at least $75 million levied predominately as claims for fraudulent transfers that occurred prior to the Acis bankruptcy. (R.002350). The Acis Claim is based on and incorporates an adversary complaint filed against the Debtor in the Acis case. (R.002350-002463).

The Debtor and Acis ultimately reached a settlement of the Acis Claim, claims filed by Acis's principal, Mr. Terry and his wife, and the Debtor's claims against Acis that were pending in Acis's bankruptcy case. On September 9, 2020, the

Debtor, Acis, and Mr. and Mrs. Terry executed a written settlement agreement (the "Settlement Agreement"). (R.002208).

Among other things, the Settlement Agreement provided that Acis's claim would be allowed as a general unsecured claim in the amount of $23 million. (R.002209) Under the Settlement Agreement, the Debtor also agreed to make several direct payments to Mr. Terry and Acis upon the effective date of a confirmed plan. (R.002210)

Under the Settlement Agreement, in addition to granting Acis a $23 million unsecured claim, the Debtor would pay (i) Acis $97,000 on account of Proof of Claim No. 159 for purported attorney's fees incurred by Acis in litigation, despite the fact that Acis was not listed as a party in the complaint attached to the claim and the basis for the claim was listed as "contract, negligence" (R.006035-6039); (ii) Mr. & Mrs. Terry $425,000, plus interest, on account of Claim No. 156 for the Terrys' 401(k), providing for a 100% recovery on that claim (R.006014-6018); and (iii) Mr. Terry $355,000 for alleged attorney's fees incurred by Mr. Terry personally in litigation to which neither the Debtor nor Acis were parties and for which no proof of claim was filed against Highland. (R.002210, 002068, 002209–16). In exchange, the Debtor also agreed to release and withdraw with prejudice two of its claims that were pending against Acis in the Acis bankruptcy case: (i) a proof of claim; and (ii)

an application for an administrative expense claim under 11 U.S.C. § 503(b). (R.002210).

On October 20-21, 2020, the Bankruptcy Court conducted a hearing on the Debtor's motion to approve the Settlement. (R.002791–3094). On October 21, 2020, at the conclusion of the hearing, the Bankruptcy Court issued an oral ruling from the bench approving of the Settlement. (R. 003078–3083). On October 27, 2020, the Bankruptcy Court entered its written order approving the Settlement pursuant to Bankruptcy Rule 9019 (R.000029–52) (the "9019 Order"). The 9019 Order is the subject of this appeal.

On January 22, 2021, the Debtor filed the *Fifth Amended Plan of Organization of Highland Capital Management, L.P. (as Modified)* (the "Plan").[6]

On February 22, 2021, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order").[7]

Under the confirmed Plan, a Claimant Trust and Litigation Sub-Trust (the "Trust") were established to receive and administer estate assets for the benefit of creditors. All "Estate Claims," including all potential claims held by the Debtor

---

[6] Bankr. Dkt. No. 1808.

[7] Bankr Dkt. No. 1943.

against Mr. Dondero, were transferred to the Trust.[8] Marc S. Kirschner was later retained as the Litigation Trustee (the "Trustee") of the Trust.[9]

On October 15, 2021, the Trustee commenced an adversary proceeding in the bankruptcy court against Mr. Dondero and a number of other defendants (the "Kirschner Lawsuit").[10]

As relevant here, the complaint in the Kirschner Lawsuit includes causes of action against or related to Mr. Dondero for (i) breach of fiduciary duty; (ii) declaratory judgment that Strand Advisors, Inc. ("Strand") is liable for the Debtor's debts in its former capacity as the Debtor's general partner; (iii) declaratory judgment that Mr. Dondero is liable for the debts of Strand as Strand's alter ego; and (iv) declaratory judgment that Dondero and Strand are liable for the Debtor's debts in their capacities as the Debtor's alter ego.[11] In essence, the Trustee seeks to hold

---

[8] Bankr. Dkt. No. 1808, p. 31-32 of 66 ("Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan" and "Upon the creation of the Litigation Sub Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims."). *See also* Bankr. Dkt. No. 1811.

[9] *See* Bankr. Dkt. No. 1811, p. 28 of 249; Bankr. Dkt. No. 2934.

[10] *See* Bankr. Dkt. No. 2934, Adv. Dkt. 1 in Adv. Proc. No. 21-03076.

[11] *See* Bankr. Dkt. 2934, Adv. Dkt. 1 in Adv. Proc. No. 21-03076, paras. 97, 201-204 and pgs. 76-84.

Mr. Dondero liable for each dollar of liability that the estate has, including and particularly the Debtor's settlement with Acis and Mr. Terry.[12]

# ARGUMENT

## A. Legal Standard

Courts in the Fifth Circuit "use[] a permissive standard to assess the actuality of the harm alleged by [an] appellant for the purpose of standing." *In re Coho Energy, Inc.*, 395 F.3d 198, 202 (5th Cir. 2004). A "bankruptcy appellant must . . . show that he was 'directly and adversely affected pecuniarily by the order of the bankruptcy court.'" *Furlough v. Cage (In re Technicool Sys., Inc.)*, 896 F.3d 382, 385 (5th Cir. 2018) (quoting *Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 365 (5th Cir. 2015)); *In re Cajun Elec. Power Coop., Inc.*, 69 F.3d 746, 749 (5th Cir. 1995) ("In order to establish standing to appeal a bankruptcy order, the putative appellant must prove that it was directly and adversely affected pecuniarily by the order, or that the order diminished its property, increased its burdens or impaired its rights."). In determining whether a party meets the "person aggrieved" test, "a court should examine a putative litigant's property, burdens, or rights . . . as a means for determining whether that party has been adversely affected by a

---

[12] Although the Kirschner Lawsuit had not been filed at the time Mr. Dondero filed his opening brief, Mr. Dondero pointed out in his Opening Brief that he had standing because, *inter alia*, he would be subject to suit by the Debtor's unsecured creditors for claims that cannot be satisfied by the estate. Appellant's Opening Brief, p. 10 (citing R. 2066, 3765, 3775). That potential suit came to fruition when the Kirschner Lawsuit was filed in October 2021. At that time, Mr. Dondero also had three pending proofs of claim on file. Reply Brief, p. 10.

bankruptcy court order." *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 2014 U.S. Dist. LEXIS 13719, at *8 n.1 (E.D. La. 2014).

### B. Mr. Dondero Meets the "Person Aggrieved" Standard

Mr. Dondero is a "person aggrieved" by the 9019 Order because he is directly and adversely affected pecuniarily by the amounts awarded to Acis and Mr. Terry through the 9019 Order.[13] The Debtor's estate is seeking to hold Mr. Dondero personally liable for all claims against the estate, totaling at least $350 million,[14] including specifically the amounts awarded to Acis and Mr. Terry under the 9019 Order.[15] Mr. Dondero thus potentially has a greater financial stake in whether the approval of this settlement is upheld than any other party in this case, including any other creditor. For this reason, Mr. Dondero is a person aggrieved by the 9019 Order and has standing to continue to prosecute this appeal. The Court should therefore deny the Motion.

The key question for this Court to consider is whether Mr. Dondero is pecuniarily interested in the outcome of this appeal. In determining whether a party is pecuniarily interested in the outcome of the appeal, a court will look at the

---

[13] At the time Mr. Dondero filed his opening brief in this appeal, he had three pending proofs of claim, claims 141, 142, and 145. Reply Brief, p. 8. As the Appellee notes in its Motion, those claims were withdrawn by Mr. Dondero effective February 1, 2022.

[14] *See* Bankr. Dkt. No. 2030, January 2021 Monthly Operating Report, p. 2 of 9.

[15] *See* Bankr. Dkt. No. 2934, paras. 97, 201-204, pgs. 76-86 of 134.

"putative litigant's property, burdens, or rights." *See id.* If the order diminishes his property, increases his burdens, or impairs his rights, the appellant is a person aggrieved of the order and has standing to appeal. *See In re Cajun Elec. Power Coop., Inc.*, 69 F.3d 746, 749 (5th Cir. 1995).

Here, by bringing broad claims seeking to hold Mr. Dondero liable for the Debtor's settlement with Acis and Mr. Terry—along with every other dollar of allowed claims in this case (including apparently the claims of routine vendors, large and small)—the Trustee has made Mr. Dondero directly financially interested in the outcome of this appeal. The 9019 Order (i) awarded Acis a $23 million claim that is worth much less, if anything; (ii) awarded Mr. Terry/Acis hundreds of thousands of dollars in claims and direct payments for liabilities that were not even incurred by the Debtor to begin with; and (iii) released claims of millions of dollars held by the Debtor against Acis. If the settlement is overturned—as Mr. Dondero believes is proper—his risk in the litigation and potential liability to the estate will be materially reduced to the tune of millions of dollars.

The case of *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 2014 U.S. Dist. LEXIS 13719 (E.D. La. 2014) is instructive. In *Gulf States*, the district court held that appellants were "persons aggrieved" under the order being appealed because (i) the order being appealed authorized the appellee to pursue all means of collection against the appellants, including "the assertion of veil piercing

or alter ego theories of recovery" and (ii) there was an adversary proceeding pending against the appellants. *Id.* at *10-11. In coming to the conclusion that the appellants had standing to challenge the order, the court stated that "[a] veil-piercing action would undoubtedly increase the burdens of Appellants and diminish their property." *Id.* The court further noted that the fact that a money judgment had not yet been entered against the appellants (meaning the appellants were not currently subject to liability) was not dispositive. *Id.* at *11. The court found this fact not to be significant because parties wishing to appeal a bankruptcy ruling may only do so within 14 days of the order from which relief is sought under Bankruptcy Rule 8001. "A finding that Appellants lack standing until judgment is rendered in the adversary complaint would destroy any realistic possibility of appeal: Appellants (and those similarly situated) would be precluded from filing an appeal unless the adversary complaint is decided within fourteen days of the challenged bankruptcy ruling. Such a bright-line rule would be highly inequitable . . . ." *Id.*

While the 9019 Order being appealed here is different from the order being appealed in the *Gulf States* case, the reasoning is applicable and persuasive to the facts at issue in this case. Litigation has been commenced against Mr. Dondero in which the Trustee seeks to hold Mr. Dondero liable for the amounts awarded under the Acis settlement and all other obligations of the estate under an alter ego theory. The potential alter ego liability of the amounts awarded to Acis and Mr. Terry—in

an amount of at least $23 million—certainly increases Mr. Dondero's burden, diminishes his property, and impairs his rights. Since the Kirschner Lawsuit seeks to hold Mr. Dondero directly liable for the amounts awarded under the 9019 Order, Mr. Dondero is directly and adversely affected pecuniarily by the 9019 Order and has standing to pursue this appeal.

This liability is not speculative. Mr. Dondero is not merely a *potential* litigation target. The Kirschner Lawsuit has been filed and the Trustee has made the settlements approved by the 9019 Order directly at issue in the suit and included in his request for damages against Mr. Dondero.[16] Thus, this case is distinguishable from the body of case law stating that being a potential litigation target, alone, is insufficient to be a "person aggrieved" by a bankruptcy court order. But here the harm to Mr. Dondero is direct and concrete as there is a live controversy where the settlement approved under the 9019 Order is at issue.

And the concrete harm to Mr. Dondero has already begun. Mr. Dondero has been required to retain counsel to defend himself against the Kirschner Lawsuit and will be required to defend against the allegations regarding the millions awarded to Acis and Mr. Terry under the 9019 Order. Mr. Dondero's counsel has already expended numerous hours in defense of the Kirschner Lawsuit. For example, Mr.

---

[16] *See* Bankr. Dkt. No. 2934, paras. 97, 201-204 and p. 84-86 of 134.

Dondero has already filed a motion to withdraw the reference in the Kirschner Lawsuit.[17] The defense of the lawsuit as to the settlement awarded under the 9019 Order is already direct and concrete harm that Mr. Dondero has incurred and will continue to incur unless and until the 9019 Order is reversed. Accordingly, the 9019 Order burdens Mr. Dondero's pockets and he is a person aggrieved by the order. *See Technicool*, 896 F.3d at 385.

An illustration of the harm the 9019 Order imposes on Mr. Dondero may be helpful. One improper aspect of the settlement approved by the 9019 Order is the Debtor's payments to Acis and Mr. Terry for liabilities that were not even incurred by the Debtor's estate.[18] For example, the 9019 Order awards Mr. Terry $355,000 in cash on the effective date (not the allowance of a claim) for an alleged liability for which no proof of claim was filed against the Debtor's estate and for which the Debtor believed it did not any have liability.[19] The settlement provides Mr. Terry with $355,000 even though (i) he did not file a proof of claim for this alleged liability; and (ii) the Debtor's CEO testified the Debtor did not have liability for the

---

[17] *See* Adv. Dkts. 45-46 in Adv. Proc No. 21-03076.

[18] Opening Brief, p. 20-21, 26-28.

[19] *Id.* at p. 27-28.

debt.[20] In other words, the settlement creates a liability against the Debtor that did not previously exist, for which no claim was filed, and for which the Debtor stated it did not have liability. This should not be allowed. If this appeal is dismissed, then this unjustified cash payment becomes a fixed liability of the estate that Mr. Dondero may have to ultimately pay dollar for dollar under the Kirschner Litigation if the Trustee prevails in that litigation. Clearly then, Mr. Dondero has a direct and adverse financial stake in whether the 9019 Order is upheld, whether in whole or in part, and he should be allowed to continue his challenge to the propriety of the settlement.

Finally, preventing Mr. Dondero from continuing his challenge of the 9019 Order impairs his rights. If this appeal is dismissed, the reasonableness of the settlement under Bankruptcy Rule 9019 and the amounts awarded to Acis and Mr. Terry may no longer be subject to challenge. This impairs Mr. Dondero's rights because it increases his exposure in the Kirschner Lawsuit and potentially deprives Mr. Dondero of a defense in the Kirschner Lawsuit.[21]

---

[20] Specifically, Mr. Seery, Debtor's CEO, testified as follows: "And Acis and Mr. Terry took the view that we had the ability to stop that litigation. We actually went out and had outside counsel tell us we did not have that ability. And after doing – doing work on it. . . . And this is one of those items that I suspect that, because of our case as a manager, it was something that was really important to Mr. Terry." Opening Brief, p. 28. "Rather than have either two non-debtors, either "HCLOF or Acis" go and spend additional dollars to litigate in Guernsey to determine fees . . . we compromised it." Opening Brief, p. 21 (R.002986, p. 197:2-6)

[21] *See In re Cajun Elec. Power Coop., Inc.*, 69 F.3d 746, 749 (5th Cir. 1995) ("In order to establish standing to appeal a bankruptcy order, the putative appellant must prove that it was directly and adversely affected pecuniarily by the order, or that the order diminished its property, increased its burdens or impaired its rights.").

## CONCLUSION

Taken together, these facts show that Mr. Dondero is directly and adversely affected pecuniarily by the 9019 Order. If the 9019 Order is reversed, in whole or in part, Mr. Dondero will be relieved of his potential liability of the Debtor's obligations to Acis and Mr. Terry under the settlement—potentially saving Mr. Dondero up to approximately $24 million. Moreover, a reversal would also relieve Mr. Dondero of the need to defend against the Trustee's allegations regarding the Acis settlement in the Kirschner Lawsuit. Due to the size and scope of the Kirschner Lawsuit and the significant sums awarded to Acis and Mr. Terry under the 9019 Order, this is direct and concrete harm to Mr. Dondero. The Fifth Circuit's "permissive standard" in evaluating standing dictates that, under these unique facts, the Court should find that Mr. Dondero has standing here as a "person aggrieved." It would be inequitable if Mr. Dondero were not allowed to challenge the initial reasonableness and propriety of a liability that the estate seeks to hold against him dollar for dollar particularly where, as here, the settlement awards significant sums which may not be justified. Under Bankruptcy Rule 9019, regardless as to whether a party objects, a bankruptcy court has an independent duty to determine that a settlement is "fair, equitable, and in the best interests of the estate."[22] The bankruptcy

---

[22] *See In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

court shirked its independent duty here and this Court should exercise its jurisdiction to review the 9019 Order. The Motion should be denied.

## REQUEST FOR JUDICIAL NOTICE

This response cites several documents appearing on the docket of the bankruptcy case below, *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11, U.S. Bankruptcy Court, Northern District of Texas (the "Bankruptcy Docket") and the Kirschner Lawsuit.[23] Appellant respectfully requests that this Court take judicial notice of the Bankruptcy Docket, the Kirschner Lawsuit, their contents, and the contents of the specific documents cited herein filed on the Bankruptcy Docket and in the Kirschner Lawsuit. This request is not being made as an attempt to supplement the record on appeal but to provide this Court with "information 'capable of accurate and ready determination by resort to a source whose accuracy on the matter cannot reasonably be questioned.'" *Halo Wireless, Inc. v. Alenco Communs. Inc. (In re Halo Wireless, Inc.),* 684 F.3d 581, 597 (5th Cir. 2012) (quoting *Kitty Hawk Aircargo, Inc. v. Chao,* 418 F.3d 453, 457 (5th Cir. 2005)) (noting that "it is within our discretion to take judicial notice" of proceedings in other courts).

---

[23] Adv. Proc. No. 21-03076, pending before the U.S. Bankruptcy Court for the Northern District of Texas.

## PRAYER

For the reasons set forth above, Mr. Dondero respectfully requests that this Court (i) deny the Motion; (ii) take judicial notice of the documents filed with on the Bankruptcy Docket and the Kirschner Lawsuit; and (iii) grant Mr. Dondero such other and further relief to which he may be entitled.

Dated: February 14, 2022      Respectfully submitted,

/s/ Bryan C. Assink
John T. Wilson IV
Texas State Bar No. 24033344
Bryan C. Assink
Texas State Bar No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: john.wilson@bondsellis.com
Email: bryan.assink@bondsellis.com

**ATTORNEYS FOR APPELLANT JAMES DONDERO**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on February 14, 2022, this document was filed via the Court's CM/ECF system, which automatically provides notice to registered interested parties.

/s/ Bryan C. Assink
Bryan C. Assink

## CERTIFICATE OF COMPLIANCE WITH RULE 8013

The undersigned hereby certifies that this response complies with the type-volume limitation set by Rule 8013(f)(3) of the Federal Rules of Bankruptcy Procedure. This response contains 3,793 words.

>   */s/ Bryan C. Assink*
>   Bryan C. Assink